IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Washington,            :
          Petitioner      :
                                  :
          v.              :      No. 485 M.D. 2020
                                  :      Submitted: April 8, 2025
The PA Department of Corrections,  :
          Respondent    :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT          FILED:  June 17, 2025

        This matter arises from the Department of Corrections' (Department) increase in the rate of deductions from Thomas Washington's (Washington) inmate account to pay court-ordered costs.[1]  Washington, an inmate at the State Correctional Institution (SCI) Houtzdale, has filed an amended petition for review in the Court's original jurisdiction, asserting that the Department violated his constitutional right to due process of law by not giving him notice and an opportunity to be heard before increasing the rate of these deductions from 20% to 25%.  The Department has filed an application for summary relief, in the form of a motion for judgment on the pleadings, asserting that this Court lacks jurisdiction over Washington's due process claim because he has failed to exhaust his administrative remedies.  For the reasons to follow, we deny the Department's application for summary relief.

---

[1] This case returns to us on remand.  *See Washington v. Pennsylvania Department of Corrections*, 306 A.3d 263 (Pa. 2023) (*Washington II*).

In 2015, Washington pled *nolo contendere* to charges of aggravated assault and unlawful firearm possession, for which he was sentenced to serve 5 to 10 years of incarceration. The sentencing court also ordered Washington to pay the costs associated with his prosecution and restitution, which totaled $15,666.49.

Under authority of Act 84,[2] the Department made deductions from Washington's inmate account at a rate of 20% per month. In January of 2020, the Department raised the rate of deduction to 25%. When Washington discovered that the deduction rate had increased, he filed a grievance with the Department. Therein, he asserted that he was not notified of the deduction increase and requested that the deductions end until he was given a hearing. Washington's grievance was rejected.

On August 25, 2020, Washington, *pro se*, filed a petition for review asserting that he was denied due process under the Fourteenth Amendment to the United Sates Constitution[3] because the Department raised the rate of Act 84 deductions from his inmate account to 25% without notice and a pre-deprivation hearing. His petition also asserted a right to a post-deprivation hearing and requested this Court enjoin further deductions until he was given a hearing by the Department. The Department filed a demurrer, contending that the deductions were mandated by the amendment to Act 84 and that any procedural due process concerns about court-ordered costs had been satisfied at the sentencing hearing. Because the Department was required to deduct a minimum of 25% from his inmate account each month, the rate of deduction could not be revised in an administrative hearing.

---

[2] Act of June 18, 1998, P.L. 640, No. 84 (Act 84). Act 84 amended Section 9728 of the Sentencing Code, 42 Pa. C.S. §9728, to add subsection (b)(5), which authorizes the Department to make deductions from inmate accounts to pay costs imposed by the sentencing court.

[3] U.S. CONST. amend. XIV. It states, in part, that no State shall "deprive any person of life, liberty, or property, without due process of law[.]" *Id.*

A divided panel of this Court sustained the Department's demurrer. We explained that the Department lacked the discretion to change the rate of the deduction taken from an inmate's account under the amended version of Act 84. *Washington v. PA Department of Corrections* (Pa. Cmwlth., No. 485 M.D. 2020, filed December 30, 2021) (*Washington I*). Central to our holding was the 2019 amendment to Act 84. It reads, in pertinent part, as follows:

> (5) Deductions shall be as follows:
>
>> (i) *The Department of Corrections shall make monetary deductions of at least 25% of deposits* made to inmate wages and personal accounts for the purpose of collecting restitution, costs imposed under section 9721(c.1), filing fees to be collected under section 6602(c) (relating to prisoner filing fees) and any other court-ordered obligation.

42 Pa. C.S. §9728(b)(5) (emphasis added).[4] Prior to the 2019 amendment, Act 84 did not specify a deduction amount but left the matter to the Department's discretion. We also reasoned that the Department was not required to notify Washington of the change in law before implementing Act 84's mandate for a minimum deduction rate of 25%. Thus, Washington's pleading did not state a legally viable claim.

In *Washington II*, 306 A.3d 263, the Pennsylvania Supreme Court reversed this Court. The majority concluded that the change in the Act 84 policy "required additional pre-deprivation notice and an opportunity to be heard before the increased rate was applied." *Id*. at 293. It explained that "[a] change in the deduction

---

[4] On January 15, 2020, the Department revised its policy on the collection of inmate debts to state, in pertinent part, that "25% of the inmate's account shall be collected until the debt is satisfied, provided that the account balance exceeds $10.00." Commonwealth of Pennsylvania, Department of Corrections, Policy No. DC-ADM 005: Collection of Inmate Debts at 3-10; ¶F.3 (2020), available at https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/005%20Collection%20of%20Inmate%20Debts.pdf (last visited June 17, 2025).

rate strikes at the heart of [the] *Montañez* [*v. Secretary Pennsylvania Department of Corrections*, 773 F.3d 472 (3d Cir. 2014),[5]] notice requirements since the rate of deduction establishes the extent of the deprivation of property." *Washington II*, 306 A.3d at 294. Even if Washington had no basis for relief from the increase in the deduction rate, he was entitled to pre-deprivation notice and an opportunity to be

---

[5] In *Montañez*, Montañez and Hale filed a civil rights action asserting a violation of due process when their inmate accounts were subject to automatic deductions pursuant to Act 84. To ascertain what process was due, the Third Circuit turned to *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which established three factors to be considered in a due process claim:

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

In *Montañez*, only the second and third factors were at issue. The Third Circuit addressed the need for pre-deprivation notice as follows:

> [When] pre-deprivation process could be effective in preventing errors, that process is required. . . . When deductions from inmate accounts involve "routine matters of accounting" based on fixed fees or where temporal exigencies require immediate action, pre-deprivation hearings are not required. . . . In either event, however, inmates are entitled to some pre-deprivation notice of the prison's deduction policy.
> . . .

*Montañez*, 773 F.3d at 484 (citations omitted). Applying these principles, the Third Circuit concluded that a short delay in offering inmates the opportunity to be heard would not undermine implementation of Act 84. Further, a pre-deprivation hearing might mitigate the risk of error. In short, the government's interest in collecting court fees did not overcome the requirement that inmates be provided process before having funds removed from their accounts.

The Pennsylvania Supreme Court adopted *Montañez*'s rationale in *Bundy v. Wetzel*, 184 A.3d 551 (Pa. 2018). The Supreme Court clarified that the controlling inquiry is not whether concrete relief may result from that process but whether the state is in a position to provide for pre-deprivation process. *Id*. at 557. In *Bundy*, the Supreme Court concluded that prior to the first deduction, the Department must "(a) inform the inmate of the total amount of his financial liability as reflected in his sentencing order, as well as the Department's policy concerning the rate at which his funds will be deducted from his account and which funds are subject to deduction; and (b) give the inmate a reasonable opportunity to object to the application of the Department's policy to his account." *Id*. at 558-59.

4

heard. Emphasizing the importance of pre-deprivation due process, the Supreme Court explained that "when pre-deprivation process is not feasible, or it undermines legitimate institutional concerns, or it involves a truly routine matter of accounting, then post-deprivation process may be substituted for pre-deprivation process." *Id.* at 296.

On remand from the Supreme Court, this Court directed the Department to file an answer, and it did so. Thereafter, this Court granted Washington leave to file an amended petition. The amended petition alleges that, until January of 2020, deposits to Washington's inmate account were garnished at a rate of 20%. This was increased to 25% without notice or an opportunity to be heard. In his grievance, he requested a pre-deprivation hearing, which was denied. The amended petition avers that the Supreme Court held that the Department violated Washington's "procedural due process rights when it increased the rate of his Act 84 deductions without pre-deprivation notice and an opportunity to be heard." Amended Petition ¶22 (quoting *Washington II*, 306 A.3d at 267). Thus, Washington has a right to a hearing.

On July 25, 2024, the Department filed an answer with new matter. It asserted that Washington was required to exhaust his administrative remedies before initiating his civil rights action, and he did not do so. In November of 2019, the Department provided Washington with a collection of inmate debt notice, reciting the amount owed and the 20% rate of deduction. After the amendment to Act 84, the Department notified all inmates, including Washington, of the increase to the deduction rate. It also posted notices on all bulletin boards at SCI Houtzdale and on the inmate television channel. The Department's answer states that it cannot stop Act 84 deductions or issue notices to all 21,280 inmates of the new deduction rate.

5

On August 14, 2024, the Department filed an application for summary relief in the form of a motion for judgment on the pleadings. The application asserts that before Washington can bring a claim for a violation of due process, he must exhaust his administrative remedies. *See* 42 Pa. C.S. §6603(a).[6] Washington filed a grievance to challenge the deduction rate of 25%, but it was rejected because it was not submitted within 15 days of the event upon which his claim was based. Thereafter, Washington did not appeal this decision to the facility manager or to the Secretary's Office of Inmate Grievances and Appeals, as required under the Department's inmate grievance policy. Because Washington did not exhaust his administrative remedies, judgment should be entered in the Department's favor on his constitutional claim.

Washington responds that the Supreme Court has already determined that the Department violated his procedural due process rights by increasing the rate of his Act 84 deductions without first providing him notice and an opportunity to be heard. *See Washington II*, 306 A.3d at 267. It also held that Washington has the right to make his case before the taking occurs. *Id*. at 301. Washington argues that the Department's application for summary relief is inconsistent with the Supreme Court's ruling. In the alternative, Washington contends that the Department's exhaustion argument lacks merit. Indeed, the Department pled in its demurrer that under 42 Pa. C.S. §9728(b)(5), it lacked authority to provide Washington any relief

---

[6] It states, "Prison conditions litigation filed in or remanded to a court of this Commonwealth alleging in whole or in part a violation of Federal law shall be subject to any limitations on remedies established by Federal law or Federal courts with respect to the Federal claims." 42 Pa. C.S. §6603(a). Section 1997e(a) of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983[, 42 U.S.C. §1983,] of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a).

6

from his deduction rate of 25%. Washington Brief at 6-7 (citing Department's Answer and New Matter ¶39).

An application for summary relief is governed by Pennsylvania Rule of Appellate Procedure 1532(b), which provides that "[a]ny time after the filing of a petition for review in an appellate or original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear." Pa.R.A.P. 1532(b). "Both an application for summary relief under Rule 1532 of the Pennsylvania Rules of Appellate Procedure and a motion for judgment on the pleadings under Rule 1034 of the Pennsylvania Rules of Civil Procedure seek similar relief." *Pennsylvania Independent Oil & Gas Association v. Department of Environmental Protection*, 146 A.3d 820, 821 n.3 (Pa. Cmwlth. 2016).

In evaluating a motion for judgment on the pleadings, the Court views "all of the opposing party's allegations as true, and only those facts that the opposing party has specifically admitted may be considered against the opposing party." *Pennsylvania Independent Oil & Gas Association*, 146 A.3d at 821 n.3. Only the pleadings and documents properly attached thereto may be considered. *Id*. Judgment on the pleadings is granted only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Id*.

Generally, an inmate must exhaust "administrative remedies as are available" before initiating a civil rights action. *Minor v. Kraynak*, 155 A.3d 114, 124 (Pa. Cmwlth. 2017). The exhaustion requirement preserves the integrity of the administrative process. *LeGrande v. Department of Corrections*, 894 A.2d 219, 222 (Pa. Cmwlth. 2006). The doctrine is not intended to set up a procedural obstacle to recovery and should be applied only where the available administrative remedies are

adequate with respect to the alleged injury. *Unified Sportsmen of Pennsylvania v. Pennsylvania Game Commission (PGC)*, 950 A.2d 1120, 1135 (Pa. Cmwlth. 2008).

The Department's inmate grievance policy has been established to resolve matters arising during the course of confinement. *See Kittrell v. Watson*, 88 A.3d 1091, 1092-93 (Pa. Cmwlth. 2014). The policy requires an inmate to appeal an adverse grievance determination to the Superintendent and, thereafter, to the Secretary of Corrections. Unless the inmate completes each of these steps, he has failed to exhaust his administrative remedies. *See Hill v. Wetzel* (Pa. Cmwlth., No. 699 C.D. 2021, filed January 5, 2023) (unreported),[7] slip op. at 7. The exhaustion of administrative remedies is required for all federal claims. *Id*. Where an inmate alleges his right to due process has been violated, the "inmate grievance systems are an adequate post-deprivation remedy[.]" *Shore v. Pennsylvania Department of Corrections*, 168 A.3d 374, 383 (Pa. Cmwlth. 2017).

In his amended petition for review, Washington alleges that he filed a grievance challenging the 25% rate of deduction and requested a hearing on the deprivation of his property. Amended Petition ¶¶10-11. In its new matter, the Department asserted that Washington did not appeal his grievance denial to the second and third levels and, therefore, did not exhaust his administrative remedies. Department New Matter ¶¶30-33. In his answer to the Department's new matter, Washington stated that he was without sufficient information to admit or deny whether he appealed his initial grievance rejection to the second and third levels and, thus, denied these allegations. Washington Answer ¶¶30-33.

---

[7] An unreported memorandum opinion of this Court may be cited for its "persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

8

Well-pleaded factual averments in new matter are admitted when they are not specifically denied by the petitioner. Pa.R.Civ.P. 1029(b).[8] Generally, responses such as the single word "denied" or the phrase "[d]enied and strict proof demanded" constitute general denials pursuant to Rule 1029(b), which effectively manifest an admission to the facts. *Swift v. Milner*, 538 A.2d 28, 31 (Pa. Super. 1988). Where a party states that after reasonable investigation, the party is without knowledge or information sufficient to form a belief, such statement has the effect of a denial. Pa.R.Civ.P. 1029(c). The Rules of Civil Procedure are to be "liberally applied to secure the just, speedy, and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantive rights of the parties." Pa.R.Civ.P. 126.

Washington's answer to the Department's new matter sets forth a denial that satisfies Pa.R.Civ.P. 1029(c). Accordingly, whether Washington exhausted his administrative remedies through all steps provided in the grievance policy is a fact that is in dispute, precluding the granting of the Department's application for summary relief.

---

[8] Pa.R.Civ.P. 1029(b)-(c) states, in pertinent part:

> (b) Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication. A general denial or a demand for proof, except as provided by subdivisions (c) and (e) of this rule, shall have the effect of an admission.

> (c) A statement by a party that after reasonable investigation the party is without knowledge or information sufficient to form a belief as to the truth of an averment shall have the effect of a denial.

> > *Note:* Reliance on subdivision (c) does not excuse a failure to admit or deny a factual allegation when it is clear that the pleader must know whether a particular allegation is true or false. See *Cercone v. Cercone*, [] 386 A.2d 1 ([Pa. Super.] 1978).

Washington also argues that the Department's grievance policy offers no more than a dead end, given the Department's claim that it is "impractical" to "issue new Collection of Debts Notices of each of those inmates with the new rate of deduction on it." Department Answer and New Matter ¶55. Such pre-deprivation proceedings for a matter such as this "would significantly frustrate the purpose of Act 84." *Id*. ¶57. In other words, the Department has indicated that the grievance process cannot afford relief from the statutory mandate for a deduction rate of 25%. Washington Brief at 9.

Further complicating this matter is that the Department did not raise the exhaustion of administrative remedies in its demurrer to the initial complaint.[9] *Williams v. Nish*, No. 1:11-cv-0396, 2015 WL 106387 *4 (M.D. Pa. January 17, 2015) ("[T]he defense [of exhaustion of remedies] should be raised as early as possible in the litigation."). In *Washington II*, the Supreme Court stated that Washington exhausted his administrative remedies before seeking judicial relief. *Washington II*, 306 A.3d at 289 ("As is the case here, Bundy exhausted his administrative remedies before seeking judicial relief."). The Supreme Court held that Washington is entitled to notice and a hearing on the increase in his Act 84 deductions and remanded the matter to our Court for further proceedings.

Given this holding and the dispute as to whether Washington appealed the denial of his grievance, the Department's application for summary relief must be denied.

_____

MARY HANNAH LEAVITT, President Judge Emerita

---

[9] Exhaustion is an affirmative defense which can be waived if not properly preserved by a defendant. *See Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002). Washington has not raised the issue of waiver.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Washington,          :
        Petitioner       :
                             :
        v.              :     No. 485 M.D. 2020
                             :
The PA Department of Corrections,   :
        Respondent    :

# **O R D E R**

AND NOW, this 17th day of June, 2025, the application for summary relief filed by The PA Department of Corrections is DENIED.

_____
MARY HANNAH LEAVITT, President Judge Emerita